# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                        )    No. 71802-9-I
          Respondent, )
                        )    DIVISION ONE
       v.                 )
                        )    UNPUBLISHED OPINION
                        )
SACIID KASIM NADIF, )
                        )
          Appellant, )    FILED: August 3, 2015

TRICKEY, J. — An attorney has a duty to advise a noncitizen defendant of the immigration consequences of his plea. Failure to do so may constitute ineffective assistance of counsel. Here, however, the record reveals that defense counsel advised the defendant of potential immigration consequences that could attach to his conviction for second degree assault. Additionally, the defendant's statement of guilty plea contained a paragraph on possible immigration consequences, including deportation, exclusion of admission to the United States, and denial of naturalization. That portion of his plea was read aloud at the hearing and acknowledged by the defendant before the court accepted the guilty plea. Accordingly, we affirm the trial court's denial of the defendant's motion to withdraw his guilty plea.

## FACTS

Saciid Kasim Nadif pleaded guilty to second degree assault-domestic violence of his wife. Nadif also pleaded guilty to the aggravating factor that the offense occurred within the sight or sound of the couple's minor child.

In exchange for his plea, the State agreed to recommend 24 months of incarceration, 9 months for the assault and 15 months for the enhancement. At

sentencing, Nadif's counsel, Timothy Leary, withdrew because of potential ineffective assistance allegations. The trial court assigned new counsel. Nadif then moved to withdraw his guilty plea under CrR 4.2(f), alleging that his defense counsel provided ineffective assistance of counsel for failing to advise him that he was facing certain deportation. Alternatively, Nadif contended that his plea was involuntary because he had not been informed of the immigration consequences.

After an evidentiary hearing, the trial court denied the motion. Nadif timely appeals, contending that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

ANALYSIS

Under CrR 4.2(f), the trial court "shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." We review the trial court's decision on a motion to withdraw a guilty plea for an abuse of discretion. State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Manifest injustice is a "demanding standard." State v. Taylor, 83 Wn.2d 594, 597, 521 P.2d 699 (1974).

To prevail on an ineffective assistance of counsel claim, Nadif must show both that his counsel's performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). In Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the United States Supreme Court held that under the Sixth Amendment right to

2

counsel, as articulated in <u>Strickland</u>, counsel has a duty to provide advice relating to deportation.

Nadif's reliance on <u>State v. Sandoval</u>, 171 Wn.2d 163, 249 P.3d 1015 (2011), as support for finding counsel deficient is misplaced. In <u>Sandoval</u>, defense counsel told his client "that he should accept the State's plea offer because he would not be immediately deported and that he would then have sufficient time to retain proper immigration counsel to ameliorate any potential immigration consequences of his guilty plea." 171 Wn.2d at 167. Here, unlike <u>Sandoval</u>, defense counsel informed Nadif that he would be facing deportation whether it was in two years if he pleaded guilty or in ten years if he were found guilty at trial.

At the evidentiary hearing, Leary and Nadif offered conflicting testimony about whether Leary had informed Nadif that a guilty plea may result in deportation proceedings. Leary testified that he had discussed immigration issues with Nadif several times. Nadif told Leary that he was a citizen of Somalia and that his green card had expired two years earlier. Leary also advised Nadif that the crime with which he was charged, second degree assault, was a crime subject to deportation. Leary clearly advised Nadif that he would be subject to deportation although there might be a question of whether he would actually be deported due to the instability in Somalia.

Before Nadif pleaded guilty, Leary unsuccessfully tried to negotiate a reduced charge from a felony. Before trial, the State informed Leary by letter that it was seeking an exceptional sentence of ten years because of the significant injuries inflicted on Nadif's wife and the fact that the assault occurred in front of the child. If Nadif pleaded guilty, the State agreed to remove the aggravator of excessive injuries for second degree assault.

Leary provided Nadif with a written copy of the State's offer. Nadif did not wish to plead guilty and the matter proceeded to trial.

Prior to the start of trial, Leary had negotiated with the State to not introduce the photographic evidence of the wife's injuries if Nadif pleaded guilty. Without that plea, the graphic photographs were going to be admitted. Nadif changed his mind the second day of trial after the CrR 3.5 hearing when the court made its decision to admit the 911 tape.

The court adjourned, giving defense counsel time to speak with his client. Leary testified that he reviewed the plea agreement with Nadif. He further testified that it was his practice to go over each and every paragraph in a plea agreement. Leary again informed Nadif that his guilty plea would have adverse immigration consequences, reminding him that his choice was to face those immigration consequences in two years if he pleaded guilty or risk facing them in ten years if he were found guilty. Leary averred that he had spoken with Nadif at length about the consequences, including how this would impact his ability to get a green card.

Nadif testified at the hearing that the he had spoken with Leary approximately four times. Nadif stated that when he first hired Leary, Nadif told Leary that he knew that there were immigration consequences to his case because it was a felony. Nadif testified that he expressed concerns about his expired green card, but that Leary told Nadif that he would contact an immigration attorney and get back to him, but never did so. Nadif further testified that he was only advised about the proposed plea offer from the State just before trial, when he was informed that his wife was going to testify.

When Nadif finally agreed to plead guilty, he testified that he was confused and misinformed and was just signing papers. Nadif alleged that he had not read the papers

4

and that his attorney just told him where to sign and what to say. Nadif claimed that he was never informed that he would in fact be deported if he pleaded guilty.

However, Nadif's testimony is contradicted by the record. At the time Nadif agreed to the plea in open court, the prosecutor specifically read aloud the following clause contained in the plea agreement that Nadif signed:

> [I]f [I am] not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.[1]

Nadif acknowledged that he was aware of this and that he still wanted to plead guilty. After acknowledging that Nadif agreed to the plea, the court queried counsel on whether he had in fact advised Nadif of the immigration consequences of his plea. Assured that Nadif was so advised, the court found his plea to be voluntarily, knowingly, and intelligently made.

The court found Leary's testimony regarding his interaction with Nadif and the ensuing discussion about the sentence and immigration consequences credible. The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from such evidence are all matters within the province of the trier of fact. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The court also noted that Nadif's answers to questions at the plea hearing demonstrated that his plea was knowing and voluntary.

The record amply supports the court's findings of fact and conclusions of law regarding counsel's effectiveness and the validity of Nadif's plea. Nadif failed to demonstrate a manifest injustice.

---

[1] Report of Proceedings (RP) (Oct. 17, 2013) at 8-9.

Affirmed.

Trickey, J

WE CONCUR: